1001 S MAIN ST ST. 49
KALISPELL, MONTANA 59901

September 16, 2019

## UNITED STATES DISTRICT COURT
## OF THE
## DISTRICT OF NEW JERSEY

U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

2019 SEP 16 P 3: 39

| | |
|---|---|
| **SAMANTHA CARTER** § | |
| Plaintiff, § | |
| § | No. |
| v. § | |
| § | |
| BENTLEY MOTORS INC. § | |
| § | |
| F.C. KERBECK BENTLEY § | |
| § | |
| Defendants. § | |

## COMPLAINT
## TO RECOVER ENTITLED DAMAGES
## FOR
## VIOLATION OF CIVIL RIGHTS, PUNITIVE &
## DECLARATORY RELIEF

COMES NOW, Plaintiff Samantha Carter, Pro Per with her complaint against the Defendants, that proves her claims in pursuit of her entitlements for damages of civil violations, punitive and declaratory relief on all claims and states the following:

### I.
### JURISDICTION, VENUE AND NOTICE

1. This action arises under the Constitution and laws of the United States, is brought pursuant to 42 U.S.C. § 1981, Equal Credit Opportunity Act 15 U.S.C. § 1691 and Deceptive Practices 12 U.S.C. § 5531. The Jurisdiction of this Court is invoked pursuant to U.S.C. § 28 1331, 1343 and 2201.

2. Pursuant to Title 28 USC §1332 (3) (a) Diversity of citizenship, venue is proper because

the citizens are of different states and the matter in controversy exceeds the sum or value of

$75,000 not including cost or interest.

3.    Pursuant to Title 28 USC §1331 Federal question, venue is proper and district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

4.    Pursuant to Title 28 US Code §1343 Civil rights, venue is proper in this federal court in order to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights.

5.    Pursuant to 28 USC §1391(a), venue is proper because this action is being brought where the defendants, have corporations, is subject to personal jurisdiction and is therefore deemed to reside, pursuant to 28 USC §1391(c), and where a substantial part of the events or omissions giving rise to the claim occurred.

## II.
## PARTIES

6.    At all relevant times to enter into this federal court for this purpose, Samantha Carter was a resident of the District of Columbia.

7.    At All times relevant hereto, F.C. Kerberk is an incorporated entity within the United States and held in the State of New Jersey. F.C. Kerbeck has a principle address of 100 Route 73 N Palmyra, NJ 08065.

8.    At All times relevant hereto, Bentley Motors, Inc. is an incorporated entity of the United States and held at 2003 Edmund Halley Drive, Suite 300, Reston, VA 20191.

## III.

## FACTUAL BACKGROUND

9. On January 15, 2019, Plaintiff Carter traveled to Palmyra, New Jersey after missing her flight to California at the Philadelphia Airport. Plaintiff had intentions on purchasing a Bentley 2020 or 2019. Plaintiff Carter, a cognac truffled-skinned toned young woman entered the dealership.

10. Plaintiff arrived and was greeted by sales person Brian McKnight, an employee of defendant F.C. Kerbeck and a representative of Bentley of North America. **Plaintiff was at first informed that she could not test drive a vehicle unless she paid for it first.**

11. Plaintiff test drove an Aston Martin after questioning the sales person about that policy because another worker informed Plaintiff quietly that that was not true. The sales person allowed Plaintiff to test drive an Aston Martin out of some false sympathy for Plaintiff.

12. Plaintiff gave the dealership a one-hundred thousand dollar deposit for the purchase of a Bentley and actually wired the money from her phone to the dealership while at the desk of the sales person.

13. The sales person informed Plaintiff that he would email her a receipt along with a complete list of the new Bentley Bentayga's that were available on January 16, 2019, because the dealership was closing shortly. Plaintiff informed the sales person that that would be fine because she did not know exactly where to register it because she is a floater and may just put it in her trust or holdings company and by the time it arrives that will be cleared up.

14. By January 20, 2019, The dealer had not bothered to provide plaintiff with a receipt or complete order form. The dealership began to ignore Plaintiff after getting her one hundred thousand dollar deposit.

15. F.C. Kerbeck committed fraud against Plaintiff.

16. Bentley Motors disregarded the matter and complaint against dealer entirely.

17. Plaintiff demanded her one hundred thousand dollar deposit over 10 times back by email phone and in person, after not receiving a receipt or even a follow up phone call.

18. Plaintiff was told to pick up her check from the dealership after pleading for her money back.

19. Plaintiff arrived at the dealership on/around February 12, 2019, to pick up her check. The dealership claimed that they did not have Plaintiff's check to give to her and appeared to be non-concerning. Plaintiff departed as she took notice of all the evil stares from sales people.

20. Brian McKnight, sales person informed Plaintiff by email that he would mail her check on February 20, 2019. Later Plaintiff was informed that her check would not be mailed and that she would have to fly back **again** to pick up her check.

21. Plaintiff informed the dealership that she would not be flying back or coming back to the dealership because she had already been there to pick up the check.

22. Plaintiff called Bentley of North America Customer Service and spoke to Brian and John. Plaintiff pleaded with Bentley corporate office to get her money back.

23. John informed Plaintiff that as far as Bentley is concerned she could be a drug dealer and that Bentley did not want her money on/around January 5, 2019 when Plaintiff was mistreated at another dealer, Bentley O'Gara. Plaintiff attempted to start over at the Jersey dealership.

24. On or around March 1, 2019, the Bentley Motors Office hung up the phone in Plaintiff's face with no returned phone calls or interference to aide in the matter after she informed them her money had been taken with no intentions to sell to her or give it back.

25. Despite, speaking with the sales manager, emailing the general manager Joseph Innaurato, acting as an agent for defendant, the dealership refused to give Plaintiff her money back or sell her a vehicle.

26. Plaintiff sent a notice to file suit against Defendant 2 on March 20, 2019 with no response.

**28.** The defendants informed Plaintiff that she was suspicious because she pulled up to their dealership in a Porsche with Montana tags and wanted to pay cash for a Bentley.

**29.** The dealership represented to Plaintiff that young black women cannot afford to pay cash for Bentley vehicles unless they are involved in illegal activity or married to a White man.

**30.** Plaintiff's money was not returned to her until March 20, 2019.

**31.** Plaintiff Carter realized that she had been blacklisted from purchasing a Bentley after calling a few other dealership whom all treated Plaintiff as though purchasing a Bentley was illegal for her to do.

**32.** Plaintiff was asked where her money came from? In addition, How can she afford to purchase a Bentley by the F.C. Kerbeck Bentley.

33. Plaintiff is a former Bentley sales person and witnessed the discrimination of colored people inquiring to buy Bentley's often; However, Plaintiff did not think that she would ever become subjected to this discrimination in the future.

34. The dealership had purposely taken her money with no intentions of giving it back or selling her a vehicle due to their perception that they were taking illegal money from a black/brown person who is not entitled to drive or buy a Bentley but F.C. Kerbeck was going to keep the money.

35. The defendants committed fraud and their actions are an instance of racial stereotyping, premised on plaintiffs race, appearance and assumed economic status based on race. The defendants perception is that Bentley buyers are white people. Their reflected discrimination would never have been engaged in had plaintiff been a white citizen of the United States or a celebrity as though only black people whom are celebrities buy Bentley's and if they are not, they must be a drug dealer.

36. Plaintiff's information and name have been passed through the United States at every major high-end dealership in a defaming manor. Plaintiff has noticed the same treatment calling dealers throughout the United States.

# CLAIMS FOR RELIEF

## IV.

## FIRST CLAIM: 42 U.S.C. § 1981–

## Engaged in blatant racial discrimination

"AGAINST ALL DEFENDANTS"

24.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

*42 U.S.C. § 1981 provides that:*

*(a) Statement of equal rights*

*All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other*

*(b) "Make and enforce contracts" defined*

*For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.*

*(c) Protection against impairment*

*The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.*

they were

# V.

## SECOND CLAIM: 15 U.S.C. § 1691 –

## Adverse Action Against Plaintiff

*Title 15 U.S.C. § 1691 provides, in pertinent part:*

*(d) Reason for adverse action; procedure applicable; "adverse action" defined*

*(6) For purposes of this subsection, the term "adverse action" means a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested. Such term does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit.*

***See*** *Bassi vs. Prestige Motors, Inc. ,7:16-cv-05298 Plaintiff was accused of being a terrorist when attempting to purchase a Mercedes and was denied the right to purchase.*

***12 U.S. Code § 1551 - Unlawful Conduct***

(c) Deceptive Practices

1 (A) the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers; and

(B) such substantial injury is not outweighed by countervailing benefits to consumers or to competition.

# VII.

## PRAYER FOR RELIEF

**81.** WHEREFORE, Plaintiff seeks a jury to hear and decide all issues within its authority and award to her compensatory and punitive damages as permitted by law in the sum of $100,000 and $1,500,000 respectively according to the following **full relief**:

- **a)** Actual and compensatory damages in excess to make her whole, Plaintiff's name has already been defamed, pursuant to 26 USC§ 104.

- **b)** Non economic and harm damages, pursuant to 42 USC § 14505.

- **c)** Punitive damages against defendants sufficient to allow justice in the form of punishment to deter further and or future wrong doings, pursuant to 16 USC § 6604.

- **d)** Past, and present anguish, pursuant to 42 USC § 14505.

- **e)** Injury of reputation per, pursuant to 42 USC § 14505.

- **f)** Pursuant to 42 USC § 1981 (a)(1), (b)(1)(2) and d(2) for injury of reputation, emotional, punitive, compensatory and retaliatory acts.

- **g)** Loss of enjoyment of life, pursuant to 42 USC § 14505.

- **m)** Injunctive relief sufficient to protect plaintiff from any harassments and intimidation or defamation.

- **n)** Pro Se fee's, litigation expenses, expert fees, costs, pre and post judgment interest as provided by law and such other and further relief as the court deems just and proper.

- **o)** Declaratory relief, pursuant to 22 USC § 2202.

# VIII.
# JURY DEMAND

82. Plaintiff request jury demand in accordance with the United States Constitution's Seventh Amendment which grants and guarantees the right that civil cases be tried by jury.

# IX.
# CERTIFICATION AND CLOSING

83. Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint:

(1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the complaint otherwise complies with the requirements of Rule 11.

Date: September 16, 2019

                                                  Respectfully Submitted,

                                                            s/<u>Samantha Carter</u>
                                                Samantha Carter, Pro Per

                                                caseink@protonmail.com

## **CERTIFICATE OF SERVICE**

This **is** to certify on the 16th day of September 2019, I filed a **true** and correct copy of the above and foregoing Complaint, in person with the Clerk of the Court and will serve upon the parties of record in person.

                                                            s/<u>Samantha Carter</u>
                                                Samantha Carter, Pro Per