UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
SAMANTHA CARTER
                                       1:19-cv-18035-NLH-JS
         Plaintiff,
                                       OPINION
    v.

BENTLEY MOTORS INC. and F.C.
KERBECK BENTLEY

         Defendants.
```

APPEARANCES:

SAMANTHA CARTER
1001 S MAIN ST.
SUITE 49
KALISPELL, MT 59901
    *Plaintiff Pro se.*

GREGORY EDWARD REID
SILLS CUMMIS & GROSS PC
ONE RIVERFRONT PLAZA
NEWARK, NJ 07102
    *Attorney for Defendant Bentley Motors Inc.*

MELISSA JENNIFER BROWN
MARKS O'NEILL O'BRIEN DOHERTY & KELLY, P.C.
CHERRY TREE CORPORATE CENTER
535 ROUTE 38 EAST
SUITE 501
CHERRY HILL, NJ 08002
    *Attorney for Defendant F.C. Kerbeck Bentley.*

HILLMAN, District Judge

   This matter comes before the Court by way of Defendants' motions to dismiss.  Pro Se Plaintiff Samantha Carter filed a complaint on September 16, 2019, alleging she experienced racial

discrimination in the course of attempting to purchase a vehicle. For the reasons stated below, the Court will grant Defendant Bentley Motors Inc.'s ("Bentley Motors") motion to dismiss and grant in part and deny in part F.C. Kerbeck Bentley's ("F.C. Kerbeck") motion to dismiss. The Court will grant Plaintiff leave to amend her complaint.

## BACKGROUND

Plaintiff Samantha Carter is a woman of color[1] and former Bentley salesperson. According to Plaintiff, as a former Bentley salesperson she had witnessed discrimination against people of color inquiring about purchasing Bentleys, but did not expect to be the subject of discrimination herself when she later sought to purchase a Bentley. Plaintiff has alleged that she visited F.C. Kerbeck, a dealership located in Palmyra, New Jersey, on January 15, 2019 with intentions of purchasing a vehicle. Plaintiff alleges she had previously made an

---

[1] Plaintiff identifies herself in the Complaint as a "cognac truffled-skinned toned young woman." ECF No. 1, ¶ 9. Plaintiff later refers in subsequent briefing to discrimination against and comments about "black/brown" persons and "black women." In subsequent briefs, Plaintiff states that she has "never identified herself as African anything" but rather stated that "she was colored" and that "a woman of color does not signify that she is African." ECF No. 16, ¶ 9. Defendants contest whether this is sufficient to establish that Plaintiff is a member of a racial minority. As set forth below, while Plaintiff could be more forthcoming in identifying her racial background, the Court finds the Complaint alleges enough facts to support an allegation that she is a member of a protected class.

2

unsuccessful attempt to purchase a Bentley from a different Bentley dealership named Bentley O'Gara.[2]

Plaintiff alleges she was greeted by an F.C. Kerbeck salesperson named Brian McKnight.[3] Plaintiff alleges that she was told she could not test drive a vehicle without paying for it first. According to Plaintiff, after questioning the salesperson and hearing from another F.C. Kerbeck employee that there was no policy preventing her from test driving a car, she was able to test drive an Aston Martin.

Plaintiff alleges that she then gave F.C. Kerbeck a $100,000 deposit for a Bentley, using her phone to wire the money to the dealership. Plaintiff claims that while she was given information to wire her money, she was not provided an order form or other documentation to complete a purchase. At this time, Plaintiff alleges that the salesperson stated that he would send her a receipt and a list of Bentley Bentaygas available for purchase. The salesperson also informed Plaintiff that the dealership would be closing in the near future.

---

[2] Plaintiff has also alleged that she was denied service at a Bentley dealership in South Africa. ECF No. 16, ¶ 36.

[3] Plaintiff does not specify in all instances whether the salesperson she was communicating with was McKnight. Where Plaintiff identifies the person she spoke with by name, this Opinion will use the provided name. In cases where Plaintiff has not identified the F.C. Kerbeck or Bentley Motors employees she interacted with, this opinion will use "salesperson" or "representative."

3

Plaintiff alleges that she informed the salesperson that she is "a floater" and was not sure where she would register the car and was considering putting the vehicle in her trust or holding companies.  ECF No. 1, ¶ 13.

Plaintiff alleges that she had not received a receipt or list of available vehicles by January 20, 2019.  According to Plaintiff, the dealership began ignoring her.  Plaintiff alleges that she contacted the dealership by email, phone, and in person over ten times about her deposit.  At one point, Plaintiff was told to pick up her check from the dealership.  When Plaintiff arrived at the dealership on February 12, 2019, Plaintiff alleges that the dealership informed her that they did not have a check for her.

Plaintiff alleges that McKnight informed her by email that he would mail her a check on February 20, 2019.  Plaintiff was allegedly told later that the check would not be mailed to her and she would have to travel to F.C. Kerbeck to retrieve it.  Plaintiff states that she informed the dealership that she would not return to the dealership because she had already made this trip once before.

Plaintiff then alleges that she contacted Bentley of North America Customer Service,[4] and spoke with two representatives

---

[4] Plaintiff refers to Bentley of North America Customer Service and Bentley Motors Inc. interchangeably.

4

named Brian and John.  Plaintiff contends that she pleaded for her money back.  According to Plaintiff, John informed her that "as far as Bentley is concerned she could be a drug dealer and that Bentley did not want her money on/around January 5, 2019 when Plaintiff was mistreated at another dealer, Bentley O'Gara."  ECF No. 1, ¶ 23.  Plaintiff also asserts that John informed her that Bentley Motors had been informed of the Plaintiff's race "based on information given to them by Bentley dealerships."  ECF No. 16, ¶ 13.

Plaintiff further alleges that Defendants[5] informed her that they believed her to be suspicious because she arrived at F.C. Kerbeck in New Jersey in a Porsche with Montana license plates and attempted to pay for a Bentley in cash.  Plaintiff further asserts that dealership employees stated that "young black women cannot afford to pay cash for Bentley vehicles unless they are involved in illegal activity or married to a White man."  ECF No. 1, ¶ 29.  Plaintiff states that employees at F.C. Kerbeck asked her where her money came from and how she could afford to purchase a Bentley.[6]

---

[5] It is not clear from Plaintiff's complaint which of the Defendants she alleges made this statement to her.  Bentley Motors has addressed Plaintiff's allegations of discrimination regarding her customer service calls.

[6] Plaintiff's complaint does not include a date when this line of questioning occurred.

5

Plaintiff alleges she also spoke with Joseph Innaurato, who Plaintiff claims is a general manager and agent for one of the Defendants.  Plaintiff alleges that Innaurato communicated to her that F.C. Kerbeck would neither sell her a car nor return her money.  Plaintiff alleges that in March 2019, Bentley Motors "hung up the phone in Plaintiff's face with no returned phone calls or interference to aide in the matter after she informed them her money had been taken."  Plaintiff states she realized that after she contacted other Bentley dealerships and received poor customer service, she realized that she had been blacklisted from purchasing a Bentley.

Plaintiff asserts that on March 20, 2019 she sent a notice to file suit against F.C. Kerbeck.  Plaintiff alleges her money was returned to her on March 20, 2019.

Plaintiff filed a complaint on September 16, 2019 containing two counts: (1) violations of the Civil Rights Act, 42 U.S.C. § 1981; and (2) violations of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 and 12 U.S.C. § 1551. Plaintiff's complaint seeks damages, actual and compensatory, and punitive damages for anguish, injury to reputation, and loss of enjoyment of life.  Plaintiff also seeks injunctive relief to protect her from any harassment, intimidation or defamation, as well as legal fees.

Defendant F.C. Kerbeck filed a motion to dismiss on October 23, 2019.  Defendant Bentley Motors filed a motion to dismiss on December 2, 2019.  This matter has been fully briefed and is ripe for adjudication.

DISCUSSION

A. Subject Matter Jurisdiction

This Court has original federal question jurisdiction over this case under 28 U.S.C. § 1331.  Plaintiff has alleged violations of 42 U.S.C. § 1981 and 15 U.S.C. § 1691.

B. Standard for a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In considering a motion under Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the pleader.  Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005); see also Philips v. Cnty. Of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008) ("[I]n deciding a motion under Fed. R. Civ. P. 12(b)(6), [a district court is] . . . required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to" the plaintiff).  A pleading is sufficient if it contains a "short

and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

When weighing a motion to dismiss, the Court does not ask "whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims[.]'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562 n. 8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions.'") (citations omitted).

In applying the Twombly/Iqbal standard, a district court will first "accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusion." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Iqbal, 556 U.S. at 678). Next, the Court will "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 211 (citing Iqbal, 556 U.S. at 679).

To meet this standard, a "complaint must do more than allege the plaintiff's entitlement to relief." Id.; see also Philips, 515 F.3d at 234 ("The Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This

8

'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.") (citing Twombly, 550 U.S at 556). The party moving to dismiss under 12(b)(6) "bears the burden of showing that no claim has been presented." Hedges, v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

C. Analysis

Noting that Plaintiff is proceeding pro se, the Court recognizes that *pro se* complaints must be construed liberally, and all reasonable latitude must be afforded to the *pro se* litigant. Estelle v. Gamble, 429 U.S. 97, 107 (1976). However, *pro se* litigants "must still plead the essential elements of [their] claim and [are] not excused from conforming to the standard rules of civil procedure." McNeil v. United States, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); Sykes v. Blockbuster Video, 205 F. App'x 961, 963 (3d Cir. 2006) (finding that *pro se* plaintiffs are expected to comply with the Federal Rules of Civil Procedure).

1. Plaintiff's 1981 Claim

    a. Against F.C. Kerbeck

Section 1981 forbids all racial discrimination in the making of private as well as public contracts. Saint Francis College v. Al-Khazraji, 481 U.S. 604, 609 (1987). To state a claim under Section 1981, a plaintiff must allege (1) plaintiff is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; (3) discrimination concerning one or more of the activities enumerated in Section 1981, which includes the right to make and enforce contracts. Brown v. Philip Morris Inc., 250 F.3d 789, 797 (3d Cir. 2001).

Section 1981 defines the term "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." Rivers v. Roadway Express, 511 U.S. 298, 301 (1994). Typically, Section 1981 claims involve making and enforcing employment contracts. Singh v. Wal-Mart Stores Inc., No. 98-1613, 1999 U.S. Dist. LEXIS 8531, at * 14 (E.D. Pa. June 9, 1999) (citing Morris v. Office Max, Inc., 89 F.3d 411, 413 (7th Cir. 1996)). Though less common in litigation, Section 1981 also applies to retail transactions. Id.

F.C. Kerbeck argues that Plaintiff fails to plead a cognizable claim under 42 U.S.C. § 1981 because she fails to

allege how any of F.C. Kerbeck's actions violated a specifically enumerated right found in the statute.  F.C. Kerbeck alleges that Plaintiff has not stated a claim because she does not allege that she was denied admittance into the dealership or denied service.  F.C. Kerbeck highlights that Plaintiff was permitted to test drive a car and leave a deposit as evidence that F.C. Kerbeck did not interfere with Plaintiff's right to enter into or enforce a contract.  Therefore, F.C. Kerbeck alleges that Plaintiff does not claim that F.C. Kerbeck refused to contract with her, but rather that she was dissatisfied with the customer service F.C. Kerbeck provided.  F.C. Kerbeck also questions whether Plaintiff has adequately alleged that she is a racial minority through her description of her skin tone.  Lastly, F.C. Kerbeck argues that Plaintiff fails to allege that she was damaged.

The Court finds that Plaintiff has stated a claim under Section 1981.  Though Plaintiff's description of her status as a racial minority could be more clearly stated, the Court finds that Plaintiff has established this element of her Section 1981 claim.  Based on the history of Section 1981, the Supreme Court concluded that "Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethic characteristics."  <u>Al-Khazraji</u>, 481 U.S. at 614 (stating that

11

discrimination on the basis of ancestry or ethnic characteristics is racial discrimination "whether or not it would be classified as racial in terms of modern scientific theory"). At this stage, Plaintiff has sufficiently plead that she belongs to an identifiable class of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics - in this case, the color of her skin.

Next, the Court finds that Plaintiff has adequately pleaded that F.C. Kerbeck had the intent to discriminate on the basis of race. In her complaint, Plaintiff has included several discriminatory comments made by F.C. Kerbeck employees regarding her race, potential involvement in illegal activity, and ability to pay for a vehicle.

Lastly, the Court finds that Plaintiff has alleged discrimination concerning an enumerated activity in Section 1981. By bringing a claim of discrimination in attempting a retail purchase, Plaintiff has presented a less common, but nonetheless valid, claim under Section 1981. Though Plaintiff alleges that she was permitted to enter the F.C. Kerbeck dealership in January 2019, she alleges that F.C. Kerbeck took her money as a deposit, failed to send her a list of available vehicles, and then retained her deposit for two months, despite her requests to have it returned. While F.C. Kerbeck may try to

12

frame Plaintiff's complaint as merely a customer service dispute, Plaintiff has alleged that an employee of either Bentley Motors or F.C. Kerbeck informed her that F.C. Kerbeck would neither sell her a car nor return her money.  The Court finds that these allegations are sufficient to demonstrate discrimination concerning Plaintiff's right to make and enforce a contract to purchase a vehicle.

The Court also notes that F.C. Kerbeck's argument that Plaintiff has failed to state she was damaged is not applicable to this claim.  Section 1981 allows for nominal damages in the absence of proof of a compensable injury.  See Gunby v. Pennsylvania Elec. Co., 840 F.2d 1108, 1121 (3d Cir. 1988) (citing Erebia v. Chrysler Plastic Products Corp., 772 F.2d 1250, 1259 (6th Cir. 1985) with approval); see also Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1190 (2d Cir. 1987) (recognizing that a court need not address the sufficiency of proof for damages because a plaintiff "may be entitled to nominal damages upon proof of a violation of a constitutional right") (citing Erebia, 772 F.2d at 1259).

The Court will deny F.C. Kerbeck's motion to dismiss with respect to this claim.

    b. Against Bentley Motors

Like F.C. Kerbeck, Bentley Motors asserts that Plaintiff has failed to state a claim under Section 1981.  Bentley Motors

13

also questions whether Plaintiff has adequately pleaded that she is a member of a racial minority.  Furthermore, Bentley Motors asserts that Plaintiff has not shown that Bentley Motors intentionally discriminated against Plaintiff nor that Bentley Motors engaged in discrimination that prevented Plaintiff from entering into a contract or engaging in activity protected by the statute.  Bentley Motors asserts that Plaintiff does not allege that it was involved in the incident at F.C. Kerbeck, and at most Plaintiff has alleged that Bentley Motors failed to intervene on her behalf.

    The Court agrees that Plaintiff has failed to state a claim under Section 1981 with respect to Bentley Motors.  As stated above, Plaintiff has made a sufficient, though perhaps confusing, pleading regarding her status as a racial minority.  However, Plaintiff has not alleged any facts that show that Bentley Motors had the intent to discriminate on the basis of race.  Though Plaintiff alleges that the Bentley Motors employees she spoke with admitted they were aware of her race, the allegations support a plausible claim they wanted nothing to do with her because they thought she could be not a drug dealer not because of her skin color.  The factual allegations regarding the Bentley Motors employees comments are simply too vague and lacking in substance to make out a claim for racial discrimination.

14

Furthermore, Plaintiff has also not shown that Bentley Motors discriminated against her concerning an enumerated activity under Section 1981. Plaintiff has not pleaded that she unsuccessfully attempted to enter into a contract to purchase a vehicle with Bentley Motors directly. Instead, Plaintiff alleges that Bentley Motors has interfered with her right to make or enforce a contract by not intervening on her behalf after she sought the return of her deposit from F.C. Kerbeck. However, Plaintiff has not pleaded that Bentley Motors had the power or the right or the power to take such actions. While Plaintiff has pleaded that Bentley Motors is a parent company of F.C. Kerbeck, no further allegations support a claim that Bentley Motors should be held liable for the actions of F.C. Kerbeck employees.

The Court will grant Bentley Motors's motion to dismiss with respect to this claim.

2. Plaintiff's ECOA Claim

In her complaint, Plaintiff cites to both 15 U.S.C. § 1691 and 12 U.S.C. § 1551 as her second count against Defendants.[7]

---

[7] The Court notes that 12 U.S.C. § 1551 was repealed. In its motion to dismiss, F.C. Kerbeck states that it appears Plaintiff "intended to cite 12 U.S.C. § 5531" as the "language contained in count two of the Complaint . . . is identical to the language in the section Kerbeck assumes Carter intended to cite." ECF No. 8-2 at 14. The Court will dismiss this part of Plaintiff's claim without prejudice.

15

Under the ECOA, a creditor may not discriminate against any applicant of the basis of race. 15 U.S.C. § 1691(a). To state a claim under the ECOA, a plaintiff must show that (1) she was a member of a protected class; (2) she applied for credit from the defendants; (3) she was qualified for the credit; and (4) despite qualification, she was denied credit. <u>Anderson v. Wachovia Mortg. Corp.</u>, 621 F.3d 268 n. 5 (3d Cir 2010) (citation omitted).

Accepting the facts alleged in the complaint as true, Plaintiff has not alleged a cognizable claim under the ECOA. Plaintiff has not alleged that she is an "applicant" as defined by 15 U.S.C. § 1691(a)(b). Plaintiff has not alleged that F.C. Kerbeck or Bentley Motors is a "creditor" as defined by 15 U.S.C. § 1691(a)(e). Plaintiff has not shown that she applied for credit from F.C. Kerbeck or Bentley Motors.[8] Similarly, Plaintiff has not pleaded any facts that show that she was qualified for such credit. Lastly, Plaintiff has not pleaded that she was denied credit by F.C. Kerbeck or Bentley Motors.

The Court will grant both F.C. Kerbeck's motion and Bentley Motors's motion to dismiss with respect to this claim.

---

[8] Plaintiff states she was "not applying for credit per se," but maintains that F.C. Kerbeck used her deposit as "an interest free loan." ECF No. 16, ¶ 4. The Court finds that this allegation is not a cognizable claim under the ECOA.

16

3. Plaintiff's New Jersey Consumer Fraud Act Claim

In her response to Defendants' motions to dismiss, Plaintiff raises for the first time a claim under the New Jersey Consumer Fraud Act ("NJCFA"). ECF No. 16, at ¶¶ 30-41. Plaintiff also accuses Defendants of having a "hidden policy against women of color" who they "do not really want driving Bentleys." Id. at ¶ 25. Plaintiff alleges that this constitutes fraud because Defendants were willing to accept her money as a deposit, but never had any intention of selling her a vehicle.

This Court has previously held that "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Mills v. Ethicon, Inc., 406 F.Supp.3d 363, 387 (D.N.J. 2019) (quoting Frederico v. Home Depot, 507 F.3d 188, 202 (3d Cir. 2007)) (internal quotations and citation omitted); see also Carpenters Health 86 Welfare Fund of Phila. & Vicinity v. Mgmt. Res. Sys., 837 F.3d 378, 383 (3d Cir. 2016) (stating that a party may not amend a complaint in a brief opposing a motion to dismiss).

The Court will grant F.C. Kerbeck's and Bentley Motors's motions to dismiss as it relates to Plaintiff's claim under the New Jersey Consumer Fraud Act.

4. Leave to Amend

As stated above, Plaintiff's elaboration of her claims against F.C. Kerbeck and Bentley Motors in her opposition brief have no effect on the sufficiency of her complaint as currently pleaded.  However, the content of Plaintiff's opposition brief does impact the Court's obligation under Third Circuit precedent to offer amendment when determining whether to dismiss a civil rights complaint for failure to state a claim.  See <u>Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.</u>, 482 F.3d 247, 251 (3d Cir. 2007) (directing that in "civil rights cases district courts must offer amendment" when determining whether to dismiss a civil rights complaint for failure to state a claim, "irrespective of whether it is requested" unless "doing so would be inequitable or futile").  Moreover, amendments to pleadings are governed by Federal Civil Procedure Rule 15, which provides that the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

The Court will grant Plaintiff leave to amend her complaint.  Plaintiff is reminded that ordinarily pleadings may not be supplemented by letter, briefs, or other submissions. Any proposed amended complaint must contain all of Plaintiff's factual allegations and legal claims in one short and plain statement.  Fed.R.Civ.P. 8(a).